defendants neither surrendered any security, relinquished any right, nor advanced any new consideration. They, therefore, took the note subject to the equities of the 'plaintiff, whose moneys on deposit with them it represented, and who had not authorized her son to accept the note for her. Lawrence v. Clark, 36 N. Y. 128; Kaminski v. Schefer, 46 App. Div. 170, 61 N. Y. Supp. 771; Taft v. Chapman, 50 N. Y. 445; Moore v. Ryder, 65 N. Y. 438; Weaver v. Barden, supra. Had they paid the check in good faith, without notice of plaintiff's claim, they would have been protected to that extent. Kaminski v. Schefer, supra. But it will be observed that not only has the check not been paid, but it was not drawn until after they had full notice of plaintiff's claim of ownership.

We have examined the other points presented, but find no substantial or prejudicial error requiring a reversal.

The judgment and order should be affirmed, with costs. All concur.

(69 App. Div. 201.)

PHENIX NAT. BANK v. KEIM et al.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. ASSIGNEE FOR BENEFIT OF CREDITORS—ACTION FOR ACCOUNTING—PARTIES.
   Action to compel assignee for benefit of creditors to account cannot be maintained by one who was a creditor of the assignor, but whose claim was paid pursuant to composition agreement that the property of assignor should be transferred to a corporation, and the creditors should receive "in payment" the notes of the corporation secured on all its real estate, machinery, fixtures, appliances, and appurtenances; the assignee having turned over to the corporation all that was to be covered by the mortgage, and having in his hands only certain money for his commissions and the costs and charges of the estate.

2. CORPORATION—RIGHT TO STOCK—COMPOSITION AGREEMENT.
   An assignment was made by S. and C., as partners, and they afterwards made composition agreement with creditors, reciting the partnership, and providing that its assets should be transferred to a corporation to be formed, S. and C. to be directors thereof, that the stock should be issued to the assignee or the copartners, and that the creditors should be paid by notes of the corporation. Held, that C. did not forfeit his right to the interest in the stock by refusal to be an officer of the corporation; nor could his right to share in the stock be defeated by claim of S. that C. had not been his partner, but merely an employé, and that though, prior to the assignment, he had agreed to form a corporation to carry on the business, one-fifth of the stock to belong to C. if he worked for the corporation five years, he refused to remain with the corporation formed under the compromise agreement.

   Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by the Phenix National Bank against John R. Keim, assignee for creditors of Thomas H. Spaulding and William H. Crosby, and others. From interlocutory judgment appointing a referee, from final judgment, and from order denying motion to correct recital in final judgment, defendant William H. Crosby appeals. Reversed.

Argued before HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Norris Morey, for appellant.
Elden Bisbee, for respondent Keim.

PATTERSON, J.   The defendant Crosby appeals from the inter-
locutory judgment, and from the final judgment entered in this ac-
tion, and from an order denying a motion to amend the final judg-
ment.   If the interlocutory judgment was, as we consider it to have
been, unauthorized, all proceedings following it must fall with it.

The plaintiff sued to compel the defendant Keim, as assignee for
the benefit of creditors of Spaulding and Crosby, to account.   In-
stead of proceeding under the general assignment law, it chose to
invoke the jurisdiction of this court.   There was neither reason, pro-
priety, nor right in its so doing, unless special circumstances were
alleged to show that the methods and machinery provided by the gen-
eral assignment law were not sufficient for its protection.   It was
proven on the trial that the assignee had begun a proceeding for an
accounting in the county court of Erie county.   He had filed his
accounts, and in that proceeding had represented truly that there
were no unpaid creditors of the assignor, and had asked that citations
be issued.   He also procured the appointment of a referee, but for
some unexplained reason he swears that he had abandoned that pro-
ceeding.   The allegations of the complaint in this action make it
plain that the draftsman of that pleading understood the situation of
the plaintiff to be such that it was necessary to set up facts to indicate
that an adequate remedy could not be obtained in the county court.
The conditions under which the plaintiff claimed the right to require
the assignee to account were not related to the assignment alone.
With the rights arising under that instrument are associated those
growing out of a compromise agreement made between the assign-
ors, their creditors, and the assignee.   The rights asserted in the
complaint are reposed upon both those instruments, the assignee
being bound to the performance of some of the terms of the compro-
mise agreement.   The plaintiff might well maintain this action if he
had given proof of facts necessary to support it.   To entitle it to an
interlocutory decree, it was necessary to show that it was a creditor
of the assignors, or that it had an interest of some kind in the as-
signed estate.   It showed neither.   On the contrary, it was proven
at the trial without contradiction that the plaintiff's debt had been
paid in the manner agreed upon by the plaintiff, and that it had no
claim whatever upon the assets that passed under the assignment
to Keim, the assignee.   The complaint is filed on behalf of the plain-
tiff and others similarly situated.   No other creditors have joined in
the action.   The parties defendant are Keim, as assignee, Spaulding
and Crosby, the insolvent debtors, the American Surety Company,
and the Spaulding Machine Screw Company.

The allegations of the complaint, after setting forth formal mat-
ters descriptive of the parties, are that on the 9th of January, 1896,
the defendants Spaulding and Crosby, doing business under the firm
name of the Spaulding Machine Screw Company, made a general as-
signment for the benefit of creditors to the defendant Keim, which
assignment was duly recorded, and under which the defendant Keim

proceeded to act, and filed an inventory or schedules as required by law; that prior to the date of the assignment the plaintiff was a creditor of Spaulding and Crosby in the sum of $5,000; that on the 24th of January, 1896, a composition deed or agreement of settlement between the creditors of Spaulding and Crosby, as copartners, the members of that firm, and the defendant Keim, as assignee, was entered into, wherein it was provided, among other things, that the assignee should pay in full all claims amounting to less than $200, and all other claims against said firm should be paid by a transfer of the assets received by said assignee, to a corporation to be formed, which corporation should issue and deliver to plaintiff, and all other creditors, its promissory notes, to be secured by mortgage; that the defendant Spaulding Machine Company was thereupon incorporated in pursuance of the terms of said agreement; that, in accordance with the terms of the composition agreement, there were delivered to the plaintiff its promissory notes, which notes were to be accompanied by bonds delivered as collateral, which bonds were to be secured by a mortgage upon all the real property and fixtures to be transferred to the defendant Keim; that the defendant Keim, pursuant to the composition agreement, undertook to transfer all property received by him to said corporation for the benefit and protection of the plaintiff and all other creditors who assented to the settlement, but as matter of fact he only transferred a portion of said property to said corporation, and still had in his possession moneys and property belonging to the trust estate, which he had not distributed among the creditors of the assignor, or delivered to said corporation, in conformity with the terms of said agreement, for the protection of this plaintiff and all other creditors similarly situated, and that he had failed to render an account of his proceedings as such assignee, although more than a year has elapsed since the date of said assignment; whereupon judgment was demanded that Keim render an account of his proceedings, and that if it appeared upon the accounting that he had improvidently, or without proper authority, expended the funds of the trust estate so as to impair the value thereof, or that he has so managed the said estate as to diminish the amount thereof, or that he has failed to exercise due diligence in the performance of the duties of said trust, then that he be charged with the losses resulting from his wrongful acts, negligence, or omissions; and that if it appear upon the accounting that Keim had not transferred and delivered to the defendant Spaulding Machine Screw Company, in the manner and pursuant to the composition agreement, then that he be required to turn over to the corporation, for the benefit of the plaintiff and all others similarly situated, any and all moneys and other property remaining in his hands as such assignee, and that the trust reposed in the defendant Keim be terminated, and that the defendant be discharged therefrom, under the rules and practice of this court.

By the composition agreement, which was introduced in evidence, it was provided, among other things, that all claims against the copartnership of Spaulding and Crosby under $200 in amount should be paid in cash; that a corporation should be organized to take over

the business of Spaulding and Crosby; that creditors of that firm whose indebtedness exceeded $200 should accept notes of the corporation to be formed for the amounts due them, which notes were to be indorsed by Thomas H. Spaulding; and the creditors stipulated that:

"We and each of us do hereby consent and agree that all the property of every kind and nature, held or acquired, or to be held or acquired, by said John R. Keim, as assignee of said Thomas H. Spaulding and William H. Crosby, shall be assigned or transferred to or acquired by a corporation to be formed as aforesaid, and that when said corporation is so formed it shall issue its bonds, to be secured by mortgage on all its real estate, machinery, fixtures, appliances, and appurtenances, in a sum or an aggregate amount equal to the notes delivered to the undersigned on account of amounts due them from said copartnership."

It was also stipulated that:

"We will accept and receive said notes in payment of the sum due us and each of us, in the amounts and on the terms hereinbefore set forth, to be secured by bonds as above stated."

And also:

"We do further consent and agree that on receipt of the cash provided to be paid us, and said notes and bonds securing the same, in liquidation and payment of our claims, neither we, the said several and respective creditors, nor either of us, nor the said executors, administrators, partners, successors, or assigns of us, of any of us, shall or will, at any time or times hereafter, except in case of failure to pay said cash, and to deliver said notes and bonds securing the same, as above set forth, sue, attach, arrest, molest, or trouble the said Thomas H. Spaulding or William H. Crosby as copartners, or either of them, or their goods or chattels, for any debt," etc.

And further:

"And upon the execution of this agreement, and the receipt by us of the cash, notes or other evidences of indebtedness shall be delivered up and restored to said Thomas H. Spaulding and William H. Crosby, their heirs, executors, administrators, or assigns."

On the trial of the action at the special term, it appeared without contradiction that, so far as the plaintiff and other creditors are concerned, the terms of the compromise agreement had been carried out absolutely, and the plaintiff had been paid. It received the promissory notes of the corporation, and bonds were also given it as security for the notes. All of those notes but one were paid. That one was extended, and two renewal notes were given for it, which had not matured at the time this action was brought. The plaintiff had consented to the transfer of all the assets of the assigned estate to the new corporation. The assignee had transferred all the property to the new corporation, and nothing was left in his hands at the time the suit was brought, except a sum of money necessary to pay his commissions and the costs and charges of the assigned estate. The trial judge found that under the terms of the composition agreement all moneys or property paid over or delivered to the defendant Spaulding Machine Company by the defendant Keim, as such assignee, were held by said company, and inure to the benefit of the plaintiff and all other copartnership creditors. That finding is unsupported by anything contained in the

74 N.Y.S.—39

compromise agreement. All that the plaintiff or the other creditors were entitled to was the security which the compromise agreement provided should be created for the protection of the notes they received. If the plaintiff had showed upon the trial that the assignee had specific property which should have been transferred to the corporation to feed the security, but which had not been so transferred, then it might have been entitled to a decree; but the assignee had transferred all that was to be covered by the mortgage. The compromise agreement expressly states that the mortgage shall be on the real property, machinery, fixtures, appurtenances, and appliances. The moneys which the assignee received were not to be, and could not in their nature be, security for these creditors, and when it appeared without contradiction that the claims of the plaintiff and the other creditors had been fully satisfied and extinguished, and that they had received all that they were entitled to by way of security for the new notes, the plaintiff's action utterly failed, and the complaint should have been dismissed. The plaintiff had no more ground for calling the defendants into this court than the merest stranger to the transactions would have had.

But enlarging the scope of the inquiry, and in view of the manner in which the case comes before us, it is proper to inquire whether there was any basis for making an interlocutory decree in consequence of matters contained in the answers of any of the defendants; or, in other words, the case being before the court on all the pleadings, whether there was a basis for the court, in the exercise of its general jurisdiction, to settle and adjust in this action any matters in controversy between Spaulding and Crosby and the assignee, or between Spaulding and Crosby as individuals. It was provided in the compromise agreement that stock of the corporation to be formed should be issued to the amount of $300,000; that Spaulding and Crosby should be members of the board of directors of that corporation, and that Spaulding should be president and Crosby vice president; that the stock of the corporation should be issued to the assignee or to the copartners,—that is, Spaulding and Crosby, —or pursuant to their orders. The defendant Spaulding in his answer denied that Crosby and he were partners on the 9th of January, 1896, when the assignment was made. He admitted the making of the composition deed or agreement, and then he alleged that prior to the 9th of January, 1896, he had been engaged in business in Buffalo under the name of the Spaulding Machine Screw Company, and that the defendant Crosby had been employed by him at a salary and commission, and that as between him and Crosby no partnership existed, but Crosby was simply his employé. He then avers that on the 30th of March, 1895, the defendant and Crosby entered into a contract pursuant to which it was agreed, by and between the parties thereto, that on or about July 1, 1895, a corporation should be organized to acquire the property and assets formerly belonging to the business he conducted under the name of the Spaulding Machine Screw Company, with a certain capital, and that he (Spaulding), in consideration of certain agreements made by Crosby, contracted to hold in trust one-fifth of the capital stock

of the company so to be organized, on the express condition that said stock should not be paid over to Crosby, nor should he be entitled to the same unless he should remain for the period of five years in the employ of the company in good standing. He further states in his answer that, in and by the composition agreement above referred to, it was expressly provided that a corporation should be organized under the name of the Spaulding Machine Company, to acquire the property formerly belonging to Spaulding, and which corporation should have a capital stock of $300,000, and that said stock should be issued to Keim as assignee, or to the defendant and Crosby, or pursuant to their orders; that, subsequent to the formation of the corporation, the defendant and Crosby were elected directors of the corporation, and the assignee offered to deliver 20 per cent. of the stock under the contract entered into between Crosby and the defendant, on condition that Crosby would enter into and continue in the employment of the Spaulding Machine Company for five years as in said contract provided (that is, the alleged contract of the 30th of March, 1895); that Crosby refused to accept stock in accordance with the contract, and withdrew from the employment of said Spaulding Machine Screw Company; that, as matter of fact, Crosby is not entitled to said stock or any part thereof.

The assignee, Keim, in his answer set up, among other things, the making of the compromise agreement, and that it was expressly provided in and by that agreement that there should be stock issued of the new corporation to the amount of $300,000; that Spaulding and Crosby should be directors and officers of that corporation, and that the stock should be issued to the defendant or to the copartners, or pursuant to their orders; that, pursuant to the agreement, a corporation was formed, and the whole stock thereof issued to him (Keim) as assignee; that all the creditors of the assignors assented to the composition agreement, and surrendered their old claims against Spaulding and Crosby, accepted the notes of the corporation, and thereupon and after settlement had been agreed upon by said creditors, and their several claims had been surrendered, Spaulding and Crosby were elected members of the board; that Crosby refused to carry out the terms, conditions, purport, and intent of said composition agreement, and withdrew and refused to be connected with the business; that Crosby and Spaulding have each demanded that defendant surrender to them a portion of the stock of the Spaulding Machine Screw Company; that Spaulding claims to be entitled to the whole, and Crosby claims to be entitled to a portion, and that the defendant assignee is unable, pursuant to the terms of said composition agreement, to ascertain what the interests of said respective assignors, if any, in stock will be; that it was the intent and purpose of the composition agreement that said stock should be delivered up or divided among the assignors according to their respective interests prior to any accounting on the part of the defendant; that the defendant has always been ready to render his account as assignee, and to make an account as trustee, and to deliver the stock so held by him to the parties entitled thereto, but he has been unable to ascertain, fix,

and adjust the interests and rights of Spaulding and Crosby in and to said stock.

It is unnecessary to refer to the answers of the other defendants. It will be seen from an analysis of the answer of the defendant Spaulding that he has claimed, as against Crosby, the right to the whole of the stock of the new corporation, upon the ground of the failure of Crosby to comply with the agreement made between Crosby and himself in March, 1895, concerning the formation of a new corporation, which corporation never was formed, and could not have been formed, in consequence of the insolvency of Spaulding, or Spaulding and Crosby, and the transfer of all the assets and property to an assignee for the benefit of creditors. The agreement of March, 1895, was not carried into the compromise agreement. By signing that agreement, Spaulding recognized that Crosby was his copartner. That fact is reiterated time and again in the compromise agreement. According to the terms, intent, and purport of that agreement, Crosby stood bound for every dollar of indebtedness of the business, and it is worse than an absurdity to suggest that the corpartnership relation did not exist between Spaulding and Crosby. On the trial at the special term, the alleged agreement of March was not introduced in evidence, and there was no basis whatever upon which an adjudication could be made that Crosby was not entitled to any of the stock. There was no foundation laid in the proof for an inquiry into the rights of either Crosby or Spaulding to the stock. All that appeared on the trial was that after the compromise agreement went into effect Crosby refused to accept a position in the new corporation. He did not forfeit his right as a copartner to his share in the stock simply because he would not be a director or officer of that corporation. The findings of fact made at the trial in no way refer to the ownership or the proportionate interest of ownership in the stock of the new corporation. It simply provides for an account of the assignee based upon the fact that he had $12,000 in his hands. In the conclusions of law, the trial judge finds that the plaintiff is entitled to an interlocutory decree; that Keim, the assignee, file his account; and that an interlocutory judgment shall further empower the referee to examine the parties and witnesses under oath in relation to the assignment, the composition deed and account, and all matters connected therewith and relating thereto, and that he report as to what persons are entitled to share in the distribution of the assigned estate, and in what priority and what proportion, and that he report as to the rights of all the parties in and to the balance of such assigned estate in the hands of the defendant Keim as such assignee. If the conclusions of law, and the interlocutory judgment entered in accordance therewith, are to be construed as authorizing the referee to determine the question of ownership of the stock of the new corporation, there was nothing in the findings of fact or in the proof to authorize that conclusion of law, or that provision of the interlocutory judgment.

But we may go further, and decide that from an examination of the record, and an inspection of the exhibits, and a consideration

of the evidence taken before the referee appointed in the inter-locutory judgment, there was no justification for the finding that, although a partner, Crosby was not entitled to any of the stock of the new corporation. As said before, he did not forfeit his right as a copartner by the failure to form a corporation under the agreement of 1895, and the court will not construe his refusal to become an officer of the new corporation, under the terms of the compromise agreement, to work a forfeiture of all his interest in the stock of that corporation, whatever that interest may have been. Upon the facts of the case, and the legal relations in which the parties stand to each other, the idea of such a forfeiture is abhorrent to justice.

The conclusion of the court is that the final judgment must be reversed, with costs to the defendant Crosby against the defendant Spaulding; that the interlocutory judgment must be reversed, with costs to the defendant Crosby against the plaintiff; that the appeal from the order denying the motion to amend the final judgment be dismissed, without costs; and that the complaint be dismissed.

HATCH and LAUGHLIN, JJ., concur. INGRAHAM, J., dissents.